UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRY T. SNIPES, SR., an individual,<br><br>Plaintiff,<br><br>v.<br><br>DOLLAR TREE DISTRIBUTION, INC., a Virginia corporation, and DOES 1 through 50, inclusive,<br><br>Defendant. | No. 2:15-cv-00878-MCE-DB<br><br>**MEMORANDUM AND ORDER** |

Through the present class action, Terry T. Snipes, Sr., on behalf of himself and those similarly situated (collectively "Plaintiffs"), challenges various wage and hour practices utilized by his employer, Dollar Tree Distribution, Inc. ("Defendant" or "Dollar Tree"). Pending before the Court is Defendant's Motion to Compel Arbitration and Amend Operative Class Definition. For the reasons stated below, Defendant's Motion (ECF No. 92) is GRANTED.[1]

///
///
///

---

[1] Because oral argument would not be of material assistance, the Court ordered this matter submitted on the briefs. E.D. Cal. Local Rule 230(g).

**BACKGROUND**

Dollar Tree initiated an arbitration program for prospective employees approximately five years ago. Def.'s MPA ISO Mot. to Compel Arbitration, ECF No. 92-1 at 1:13. In May of 2015, the program was expanded to include current employees. At that time, current employees were given an opportunity to either opt out or enter into an arbitration agreement with Defendant. Id. at 13–15. As to any new individuals hired on or after October 6, 2014, however, Dollar Tree required an agreement to arbitrate as a condition of employment (hereafter referred to as the "Arbitration Associates"). Id. at 16–18.

In the meantime, on April 1, 2015, Plaintiff Terry T. Snipes, Sr, an existing Dollar Tree employee who had chosen to opt out of the arbitration program, brought the first eight causes of action against Defendant on a class-wide basis pursuant to Federal Rule of Civil Procedure 23. Pls.' SAC, ECF No. 39 at 1–2. In the Ninth through Sixteenth causes of action, Snipes also sought civil penalties against Dollar Tree pursuant to the provisions of California's Private Attorney General Act ("PAGA"), California Labor Code § 2699 et seq. Id.

The following month, on May 11, 2015, Plaintiff filed an Ex Parte Application for a Temporary Restraining Order ("TRO") seeking to compel Dollar Tree to distribute an informational notice of the present lawsuit to all its employees. At the May 21, 2015, hearing on the TRO, Defendant differentiated between those employees hired before October 6, 2014, who were given an opportunity to opt out of the arbitration agreements, and the Arbitration Associates. TRO Hr'g Tr., ECF No. 75-1, Ex. B at 3:5–4:8, May 21, 2015. Plaintiffs were concerned with whether arbitration agreements would be enforced against those employees hired before October 6, 2014. Id. at 5:3–8. In order to eliminate concern, Defendant agreed not to enforce any arbitration agreement entered into by employees hired prior to that time. Id. at 3:19–4:8. Plaintiffs acknowledged Defendant's agreement and as such, this Court denied the TRO. Id. at 5:3–6:15.

According to Dollar Tree, as discovery proceeded it believed both sides recognized that the Arbitration Associates were not included within the class of employees participating in the lawsuit.

Plaintiffs eventually moved to certify the class and subclasses to be included as litigants. On November 28, 2017, this Court granted that Motion and certified Plaintiffs' classes. Order, ECF No. 63 at 11–14. Defendant then moved to reconsider the class certification on September 17, 2018, and that motion was denied. Order, ECF No. 84 at 2:4.

Dollar Tree now moves to enforce the arbitration agreements as to the Arbitration Associates. Def.'s Mot. to Compel Arbitration, ECF No. 92 at 1–4. Defendant further moves to amend the operative class definitions to exclude the Arbitration Associates from the class and subclasses to account for enforcement of those agreements. Id.

## STANDARD

The Federal Arbitration Act ("FAA") governs the enforcement of arbitration agreements involving interstate commerce. 9 U.S.C. § 2. The FAA allows "a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in [the arbitration] agreement." 9 U.S.C. § 4. Valid arbitration agreements must be "rigorously enforced" given the strong federal policy in favor of enforcing arbitration agreements. Perry v. Thomas, 482 U.S. 483, 489–90 (1987) (citation omitted). To that end, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985) (emphasis in the original).

The Supreme Court has repeatedly recognized the strong national policy favoring

arbitration. See, e.g., Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24–25 (1991) (FAA's "purpose was .... to place arbitration agreements upon the same footing as other contracts," and recognizing a "liberal federal policy favoring arbitration agreements"); Shearson/Am. Express Inc. v. McMahon, 482 U.S. 220, 226 (1987) (FAA "establishes a 'federal policy favoring arbitration,' . . . requiring that we rigorously enforce agreements to arbitrate." (citations omitted)); Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 625 (1985) (federal policy of FAA is one which guarantees the enforcement of private contractual arrangements).

Given this policy, it is clear that a court is obligated to liberally interpret and enforce arbitration agreements and to do so "with a healthy regard for the federal policy favoring arbitration." Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). Significantly, too, any doubts concerning arbitrability should be resolved in favor of arbitration. Mitsubishi Motors Corp., 473 U.S. at 624 n.13 (noting that the appellate court "properly resolved any doubts of arbitrability"); see also Hodsdon v. Bright House Networks, LLC, 2013 U.S. Dist. LEXIS 52494 at *6 (E.D. Cal. Apr. 11, 2013) ("Because there is a presumption in favor of arbitration, the Court is required to resolve any doubts concerning the scope of arbitrable issues in favor of arbitration.").

In determining whether to compel arbitration, the Court may not review the merits of the dispute. Rather, in deciding whether a dispute is subject to the arbitration agreement, a court must answer two questions: (1) "whether a valid agreement to arbitrate exists," and, if so, (2) "whether the agreement encompasses the dispute at issue." Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000). If a party seeking arbitration establishes these two factors, the court must compel arbitration. 9 U.S.C. § 4; Chiron, 207 F.3d at 1130. Accordingly, the Court's role "is limited to determining arbitrability and enforcing agreements to arbitrate, leaving the merits of the claim and any defenses to the arbitrator." Republic of Nicaragua v. Standard Fruit Co., 937 F.2d 469, 479 (9th Cir. 1991).

///

4

**ANALYSIS**

**A.     Enforceability of the Arbitration Agreement**

In determining the validity of an arbitration agreement, the district court looks to "general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration." Wagner v. Stratton Oakmont, Inc., 83 F.3d 1046, 1049 (9th Cir. 1996). Under California law, mandatory arbitration agreements offered as a precondition to employment are enforceable provided there is no indication that applicants signed the agreement under duress, were lied to, or otherwise manipulated into signing the agreement. Baltazar v. Forever 21, Inc., 62 Cal. 4th 1237, 1245 (2016).

All Arbitration Associates signed an arbitration agreement as a condition of employment. Pls.' Opp. to Mot. to Compel Arbitration, ECF No. 95 at 3:12–15. As part of the Dollar Tree employment application, prospective employees were required to review several computer screens wherein applicants viewed the arbitration agreement, clicked on a statement affirming that they had received and read it, and digitally signed the agreement. Votta Decl. ¶¶ 10–13. Notably, there was no time limitation in reviewing the agreement and the agreement itself was plain and unequivocal with bold language indicating that associates understood their relinquished rights. Id. at ¶ 12; Arbitration Agreement, ECF No. 92-2, Ex. A at 14. Those agreements provided that Dollar Tree would pay various fees associated with the arbitration, including those charged by the arbitrator. Adequate discovery was also permitted under the terms of the arbitration agreements. Under the circumstances, Dollar Tree's procurement of the arbitration agreements was neither procedurally or substantively unconscionable. See, e.g., Collins v. Diamond Pet Food Processors of Cal., No. 2:13-cv-00113-MCE-KJN, 2013 U.S. Dist. LEXIS 60173 at *10–12 (E.D. Cal. Apr. 25, 2013); Horne v. Starbucks Corp., No. 2:16-cv-02727-MCE-CKD, 2017 U.S. Dist. LEXIS 101498 at *11 (E.D. Cal. June 29, 2017).

///

Plaintiffs nonetheless "contend that, due to Defendant's intentional omission or, in some cases, misrepresentation of crucial information, the [prospective employees] were induced to sign arbitration agreements and class action waivers without proper notice of this Action, which was pending at the time their signatures were procured." Pl's Resp. to Suppl. Authority, ECF No. 100 at 1. This argument is not well taken.

Plaintiffs' attempt to compare this case to cases where an employer withheld notice of a lawsuit to induce current employees to sign an arbitration agreement fails. See Pls.' Opp. at 10:20–13:12. Those cases are distinguishable from the present matter, where prospective employees were required to agree to arbitrate before being hired. Plaintiffs' argument incorrectly presupposes that new applicants were subject to the same rights as existing employees who worked for Dollar Tree during the time of the alleged damages and already subject to the wage and hour deprivations alleged by the class action. Defendant's failure to provide notice of the present action does not invalidate their agreements because the Arbitration Associates were not employed by Dollar Tree at the time and thus could not be party to the claims associated with this suit. Accordingly, the Court finds that a valid agreement to arbitrate exists between the parties.

**B.     Scope of the Arbitration Agreement**

Having determined that an enforceable arbitration agreement is in place between Dollar Tree and the Arbitration Associates, the Court must next consider whether that agreement covers the particular controversy at issue here. Lewis v. UBS Fin. Servs. Inc., 818 F. Supp. 2d 1161, 1165 (N.D. Cal. 2011). Because the FAA reflects a "liberal federal policy favoring arbitration agreements," "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Memorial Hosp., 460 U.S. at 24-25; see also Simula, Inc. v. Autoliv, Inc., 175 F.3d 716, 721 (9th Cir. 1999) ("To require arbitration, [plaintiff's] factual allegations need only 'touch matters' covered by the contract containing the arbitration clause and all doubts are to be resolved in favor of arbitrability.").

Plaintiffs broadly assert that "the arbitration agreements do not cover the claims of this Action for at least a large segment of the class." Pls.' Opp. at 8:10–11. However, the arbitration agreement signed by Arbitration Associates clearly indicates an agreement to arbitrate "all claims or controversies . . . that can be raised under applicable federal, state, or local law, arising out of or relating to Associate's employment." Arbitration Agreement at 1.

Plaintiffs nonetheless seize upon information provided in the Frequently Asked Questions ("FAQ") portion of Defendant's online application which indicates that the arbitration agreement "does not cover any dispute in which you are already a party, or a putative member of a class, in a class, collective, or representative action on file in court as of the Effective Date of the Arbitration Agreement."[2] Pls.' Opp. at 14:7–15. Plaintiffs argue that because this representation is "manifestly unjust," it should exempt the applicant signatories from having waived their rights to participate in the present action. Id. at 13:12–19. This Court, again, disagrees.

First, the FAQ provision above applies only to individuals who are "already a party" to a class, collective, or representative action. As all Arbitration Associates signed arbitration agreements before their time of hire, they cannot be included in preexisting class action claims available only to existing Dollar Tree employees. Second, the language quoted above as relied upon by Plaintiffs fails to acknowledge that it is limited because the FAQs earlier provide guidance as to the meaning of the term "dispute." In a Section entitled "What disputes are not covered by the Arbitration Agreement," the FAQs unequivocally state that, "[t]his Agreement does not cover a case on file in court as of

---

[2] Both Plaintiffs and Defendant ask the Court to take Judicial Notice of provisions contained in the FAQ (ECF No. 95-2, ECF No. 98) portion of Dollar Tree's online application materials. As such, this Court addresses them together. Under Federal Rule of Evidence 201, a court may take judicial notice of matters which are "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." As both documents are from the same web address link, they are not subject to reasonable dispute. Therefore, both Plaintiffs' and Defendant's requests are GRANTED. Additionally, this Court is aware of Defendant's Request for Judicial Notice (ECF No. 93) as to four orders issued by various Superior Courts of the State of California, but because the Court did not need to consider these orders in its determination, Defendant's request is DENIED as moot.

February 23, 2015. Therefore, if you were a party in an individual case . . . that was on file in court as of February 23, 2015, such pending claims are not covered by the Agreement." Def.'s RJN, Ex. A at 5.

Plaintiffs' lawsuit here was commenced on April 1, 2015, a point in time after the specified cut-off of February 23, 2015 specified in the FAQs, and consequently the FAQs do not exempt the Arbitration Associates from being subject to arbitration in the present matter.[3] As such, claims of the Arbitration Associates are subject to individual arbitration and Defendant's Motion to Compel Arbitration is thus GRANTED.

### C. Class Definition

Given the foregoing conclusion, the class definitions must also be modified. As defined, the class and subclasses include "all current and former nonexempt employees" of Dollar Tree. ECF No. 63 at 11–14. Since the Arbitration Associates must arbitrate their claims, they are not subjected to the class claims alleged here. Consequently, the proposed class definition is overbroad. See Mazur v. eBay, Inc., 257 F.R.D. 563, 567 (N.D. Cal. 2009) (rejecting the imprecision of a class definition where it included unharmed individuals); Wolph v. Acer Am. Corp., 272 F.R.D. 477, 482–83 (N.D. Cal. 2011) (finding a class definition overbroad where the proposed class included persons who were not damaged). The Court may properly, however, cure any defect contained within a class definition. See, e.g., Wolph, 272 F.R.D. at 483; see also Powers v. Hamilton County Public Defender Com'n, 501 F.3d 592, 619 (6th Cir. 2007) ("district courts have broad discretion to modify class definitions"); In re Monumental Life Ins. Co., 365 F.3d 408, 414 (5th Cir. 2004) ("district courts are permitted to limit or modify class definitions to provide the necessary precision").

---

[3] While the Court recognizes that Plaintiffs' claim also includes claims premised on PAGA, those claims rely solely on concurrently litigated violations of the California Labor Code. In addition, PAGA claims must be brought in a representative action and include other current and former employees; consequently, an individual plaintiff cannot bring a claim simply on his or her own behalf. See, e.g., Reyes v. Macy's, Inc., 202 Cal. App. 4th 1119, 1123 (2011). Since any claims accruing to the Arbitration Associates must be individually adjudicated through arbitration, the PAGA claims cannot be sustained. Wentz v. Taco Bell Corp., No. 1:12-cv-01813-LJO-DLB, 2012 U.S. Dist. LEXIS 172049, at *5 (E.D. Cal. Dec. 4, 2012) ("The PAGA claim derives from California Labor Code claims. Without them, there is no substantive basis to assert a PAGA claim").

Here, Plaintiffs' definition fails to limit the class and subclasses to those employees hired after October 6, 2014 whose employment was conditioned on signing an agreement to arbitrate. Accordingly, to properly narrow the class and subclasses, the introductory paragraph of the class definitions for Classes 1 – 6 (ECF No. 63 at 11–14) are modified to reflect that they pertain only to current and former nonexempt employees of Dollar Tree Distribution Inc. who did not enter into a Mutual Agreement to Arbitrate Claims with Dollar Tree on or after October 6, 2014.

## CONCLUSION

For the reasons stated above, Defendant's Motion to Compel Arbitration and Amend Operative Class Definitions (ECF No. 92) is GRANTED as follows with respect to each class member identified in Appendix A and Appendix B of Defendant's Notice of Motion:

Pursuant to the FAA, 9 U.S.C. section 3, as to the class members identified in Appendix A:

    a. Each is compelled to arbitrate, in the manner provided by his or her Arbitration Agreement with Dollar Tree, the first through eighth claims for relief asserted in the operative complaint (ECF No. 39), which shall be initiated within ninety (90) days of this Order, should the class member so choose; and

    b. The ninth through seventeenth claims for relief asserted in the operative complaint are dismissed.

Pursuant to the FAA, 9 U.S.C. section 3, as to the class members identified in Appendix B:

    a. Each is compelled to arbitrate, in the manner provided by his or her Arbitration Agreement with Dollar Tree, the first through eighth claims for relief asserted in the operative complaint (ECF No. 39) arising on or after

October 6, 2014, to be initiated within ninety (90) days of the Order granting this Motion, should the class member so choose; and

   b. The ninth through seventeenth claims for relief for civil penalties arising on or after October 6, 2014, are dismissed.

Pursuant to this Court's inherent authority and broad discretion to modify class definitions and as a consequence of other portions of this Order, the introductory paragraph of class definitions for Classes 1 through 6 (ECF No. 63 at 11–14) is hereby amended from:

> All current and former nonexempt employees of Dollar Tree Distribution Inc. who at any time within four (4) years preceding the filing of this action . . .

*To read:*

> All current and former nonexempt employees of Dollar Tree Distribution Inc. **(who did not enter into a Mutual Agreement to Arbitrate Claims with Dollar Tree on or after October 6, 2014)** who at any time within four (4) years preceding the filing of this action . . .

IT IS SO ORDERED.

Dated: November 6, 2019

_____
MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE